IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHNNY L. MEADOWS, On Behalf of Himself and All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| | § | Civil Action No. 3:15-CV-1174-D |
| VS. | § § | |
| LATSHAW DRILLING COMPANY, LLC, | § § | |
| Defendant. | § § | |

MEMORANDUM OPINION
AND ORDER

This is an action by Johnny L. Meadows ("Meadows"), a former employee of defendant Latshaw Drilling Company, LLC ("Latshaw"), alleging that Latshaw failed to give the required 60-day written notice before a mass layoff or plant closing, as required by the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. §§ 2101 *et seq.* ("WARN Act"). The principal question presented by Latshaw's motion for summary judgment is whether Latshaw's drilling rigs can be aggregated into a "single site of employment," which is necessary to establish liability under the WARN Act. Concluding that a reasonable jury could not find in Meadows' favor on this issue, the court grants the motion and dismisses this action by judgment filed today.

I

Meadows was employed by Latshaw until he was laid off in 2015.[1] Latshaw is a

_____

[1]In deciding Latshaw's summary judgment motion, the court views the evidence in the light most favorable to Meadows as the summary judgment nonmovant and draws all reasonable inferences in his favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541

drilling contractor that provides drilling services to third-party oil and gas companies, also known as "operators."  Operators lease land on which to drill oil and then contract with Latshaw for the drilling services on a project-by-project basis.  Once a contract is signed, Latshaw assembles a crew, sends a drilling rig to the well site, and drills the well according to the operator's requests.  Latshaw has four fixed locations where it conducts business: a corporate office in Tulsa, Oklahoma, and three yards where it stores (or "stacks") drilling rigs that are not in use, extra drilling equipment, and vehicles.[2]  During the time period relevant to this suit, Latshaw had 39 drilling rigs capable of operation spread out across three states. Approximately 22 to 24 employees work on each rig at any given time.  Each rig is described on Latshaw's website as being in one of three geographical divisions—the Permian Basin, Anadarko Basin, or Arkoma Basin—based on the oil and gas formation in which the rig primarily drills.[3]  In the 23 months that Meadows was employed by Latshaw, he worked on nine different rigs, all in the Permian Basin, and some for as few as three days.

When oil prices began to drop in late 2014, operators stopped drilling wells and contracting for Latshaw's services.  As a result, between January 2015 and April 2015,

---

F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[2]One yard, located in Broken Arrow, Oklahoma (a suburb of Tulsa), is approximately eight miles away from the corporate office and generally has two employees.  Another yard, in Stillwater, Oklahoma, is approximately 80 miles away from the corporate office and has around 10 employees.  A third yard, in Midland, Texas, is over 500 miles from the corporate office and employs one person.

[3]From the time that Latshaw's website became operational until February 2016, Latshaw did not change the division assigned to each drilling rig on its website.

Latshaw stacked 29 of its 39 drilling rigs and laid off many of its employees who were working on those rigs, including Meadows. Latshaw had 1,119 employees in October 2014, but that number decreased to 556 employees by April 2015.

Meadows filed this lawsuit on behalf of himself and others similarly situated,[4] alleging that Latshaw failed to give him and other former employees on his rig and at other rigs the required WARN Act notice before ordering a mass layoff, or, alternatively, a plant closing. Latshaw moves for summary judgment, contending that it was not required to give Meadows or other employees WARN Act notice because no mass layoff or plant closing occurred. Meadows opposes the motion.

II

When a summary judgment movant will not have the burden of proof on a claim at trial, it can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovant must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof

---

[4]Meadows also moves for class certification, appointment of class representation, and appointment of class counsel. Because the court is granting Latshaw's motion for summary judgment and dismissing all of Meadows' claims in this memorandum opinion and order, the court need not address this motion.

as to any essential element renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

III

A

The WARN Act requires that certain employers[5] give affected employees[6] 60 days' written notice before a "plant closing" or "mass layoff." *See* 29 U.S.C. § 2102(a); *see also Davis v. Signal Int'l Tex. GP, L.L.C.*, 728 F.3d 482, 484 (5th Cir. 2013). "An employer who fails to provide such notice is liable for back pay, lost benefits, civil penalties, and attorneys fees." *Viator v. Delchamps Inc.*, 109 F.3d 1124, 1127 (5th Cir. 1997) (citing 29 U.S.C. § 2104); *see also Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1282-86 (5th Cir. 1994). The parties only dispute whether a "plant closing" or "mass layoff" occurred. "Plant closing" is defined, in pertinent part, as "the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an

---

[5]The WARN Act defines "employer" as "any business enterprise that employs—100 or more employees, excluding part-time employees; or 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)." 29 U.S.C. § 2101(a)(1)(A)-(B) (parenthesis in original). It is undisputed that Latshaw qualifies as an employer under the WARN Act.

[6]The WARN Act defines "affected employees" as "employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer." 29 U.S.C. § 2101(a)(5). It is undisputed that Meadows qualifies as an affected employee under the WARN Act.

employment loss at the single site of employment during any 30-day period for 50 or more employees[.]"  29 U.S.C. § 2101(a)(2).  "Mass layoff" is defined, in pertinent part, as "a reduction in force" that "results in an employment loss at the single site of employment during any 30-day period for—at least 33 percent of the employees . . . and at least 50 employees[.]"  *Id.* at § 2101(a)(3).

The parties' dispute specifically focuses on whether Latshaw's shutdown or reduction in force resulted in an employment loss at a "single site of employment" for 50 or more employees.  The WARN Act "does not specifically define what constitutes a single site of employment," but "the [Department of Labor ("DOL")] regulations do."  *Viator*, 109 F.3d at 1127.  20 C.F.R. § 639.3(i) provides, in pertinent part:

> (1) A single site of employment can refer to either a single location or a group of contiguous locations.  Groups of structures which form a campus or industrial park, or separate facilities across the street from one another, may be considered a single site of employment.
>
> \*   \*   \*
>
> (3) Separate buildings or areas which are not directly connected or in immediate proximity may be considered a single site of employment if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment.  An example is an employer who manages a number of warehouses in an area but who regularly shifts or rotates the same employees from one building to another.
>
> (4) Non-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site.  For example, assembly plants which are located on opposite sides of a town and which are managed by a single employer are separate sites if they employ different

workers.

\* \* \*

(6) For workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes.

\* \* \*

(8) The term "single site of employment" may also apply to truly unusual organizational situations where the above criteria do not reasonably apply. The application of this definition with the intent to evade the purpose of the Act to provide notice is not acceptable.

In his first amended complaint, Meadows alleges that Latshaw's rigs are collectively a single site of employment, as defined by 20 C.F.R. § 639.3(i)(3) and/or (8).  Alternatively, he asserts that Latshaw's corporate office constitutes a single site of employment, as defined by § 639.3(i)(1), (3), (6), and/or (8); that Meadows and others similarly situated worked at a single site or sites of employment in connection with a truly unusual organizational situation, as defined by § 639.3(i)(8); or that each rig operating at the relevant single site of employment for Meadows and others similarly situated constitutes an operational unit within such single site of employment, as defined by § 639.3(j).[7]

_____

[7]20 C.F.R. § 639.3(j) defines "facility" as "a building or buildings" and defines "operating unit" as "an organizationally or operationally distinct product, operation, or specific work function within or across facilities at the single site."

- 6 -

B

As a threshold matter, the court must address whether Latshaw's motion for summary judgment covers all of Meadows' theories of liability under the WARN Act. Meadows contends that Latshaw's motion for summary judgment addresses only his primary theory of liability—that Latshaw ordered a mass layoff—and that Latshaw confines its argument to 20 C.F.R. § 639.3(i)(3) and (4). And he maintains that Latshaw has not addressed his alternate theories of liability—that Latshaw ordered a plant closing pursuant to 20 C.F.R. § 639.3(b) and (j), or that Latshaw's organization is a "truly unusual organizational situation," within the meaning of 20 C.F.R. § 639.3(i)(8).

Latshaw responds that Meadows' only theory of liability is that notice was required under the WARN Act. It posits that a mass layoff or a plant closing each requires that 50 or more employees be affected at a "single site of employment." And it maintains that because there were not enough employees to trigger the requirement of WARN Act notice at any of Latshaw's single sites, the distinction between the two is irrelevant in this case. Latshaw also points out that 20 C.F.R. § 639.3(i) simply sets forth the various definitions of "single site of employment," and that none of those definitions supports Meadows' claim that notice was required under the WARN Act.

The court holds that Latshaw's motion for summary judgment addresses all of Meadows' theories of liability under the WARN Act. In his amended complaint, Meadows alleges that Latshaw ordered a mass layoff, or, alternatively, a plant closing, as defined by the WARN Act. Under either basis for liability, Meadows must show that 50 or more

employees were affected at a "single site of employment."  *See* 29 U.S.C. § 2101(a)(2), (3). 20 C.F.R. § 639.3(j) merely defines "facility or operating unit" as used in the definition of plant closing, and 20 C.F.R. § 639.3(i) merely defines "single site of employment."   In its summary judgment brief, Latshaw asserts that each of its job sites (i.e., each rig, each yard, and the corporate office) was a separate single site of employment, and that the sites cannot not be treated collectively as one single site.   And Latshaw maintains that fewer than 50 persons were employed at each job site so that neither a plant closing nor a mass layoff could have occurred.   Accordingly, the court concludes that Latshaw's motion for summary judgment addresses all of Meadows' theories of liability.

C

The court will next assume *arguendo* that each of Latshaw's job sites (i.e., each rig, each yard, and the corporate office) constitutes a separate single site of employment, and decide whether a reasonable jury could find that there were a sufficient number of affected employees at any one site to trigger the requirement of WARN Act notice.  Latshaw contends that each of its job sites constitutes a separate single site, and that, because fewer than 50 persons were employed at each single site, neither a plant closing nor a mass layoff, within the scope of the WARN Act, could have occurred.  Latshaw also maintains that Meadows' claims must fail as a matter of law if he cannot show that Latshaw's rigs, yards, or corporate office should be treated collectively as a single site.

In response, Meadows merely posits that Latshaw made this argument "in a conclusory fashion."  P. Br. 6 n.7.  But, as the summary judgment nonmovant addressing a

claim on which Meadows will have the burden of proof at trial, Latshaw can obtain summary judgment simply by pointing the court to the absence of evidence on any essential element of Meadows' claim. *See Celotex Corp.*, 477 U.S. at 325. Thus Latshaw can merely point the court to the absence of evidence that its rigs, yards, or corporate office, on its own, had sufficient employees to constitute a plant closing or a mass layoff. But Latshaw does more and presents summary judgment evidence showing that 30 employees work at its corporate office, 10 or fewer employees work at each yard, and approximately 22 employees work on each of its rigs at any given time. Latshaw also points out that Meadows admitted that he never worked on a rig that had more than 28 persons on it.

Moreover, Meadows does not assert, much less present any evidence showing, that a sufficient number of employees experienced an employment loss at any one of Latshaw's job sites to trigger the WARN Act notice. Although Meadows' failure does not permit the court to enter a "default" summary judgment on any of Meadows' WARN Act claims, *see, e.g., Tutton v. Garland Independent School District*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.), "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence," *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Associates*, 929 F.2d 160, 165 (5th Cir. 1991)). And

> [i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show

that the movant is entitled to it[.]

Rule 56(e)(2), (3).  Accordingly, because Meadows has not raised a genuine issue of material

fact as to whether a sufficient number of employees experienced an employment loss at any

one job site to trigger the WARN Act notice, the court grants Latshaw's motion for summary

judgment on Meadows' WARN Act claims to the extent that Meadows maintains that any

of Latshaw's job sites, on its own, constitutes a single site of employment.

### D

The court now considers whether a reasonable jury could find that any of Latshaw's

job sites can be treated collectively as a single site of employment.  Latshaw avers that none

of its rigs, yards, or its corporate office can be treated collectively as a single site.  Meadows

responds that he "does not seek to aggregate the drilling rigs with any office or yard, but

merely with each other."  P. Br. 26.  And he contends that Latshaw's rigs should be

combined into three single sites of employment—one single site for the rigs in each

geographical division (i.e., the Permian Basin, Anadarko Basin, and Arkoma Basin).

### 1

"The issue of whether multiple work locations constitute a 'single site of employment'

under WARN is a mixed question of law and fact."  *Viator*, 109 F.3d at 1126-27 (citing

*Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 934 (5th Cir. 1994)).  "[T]he DOL made

clear in its analysis of its implementing regulations that '[t]he general rule is that separate

facilities are separate sites'" and "that exceptions to the general rule are 'narrow' and limited

to cases where geographically distinct sites have an 'inextricable operational purpose.'"  *Id.*

- 10 -

at 1127 (quoting 54 Fed. Reg. ¶¶ 16,049-050 (Apr. 21, 1989)).  "'The regulations indicate that two plants across town will rarely be considered a single site for purposes of a mass layoff.'"  *Id.* (quoting *Williams*, 23 F.3d at 934).  Separate facilities can be treated as a single site of employment only if "all three factors identified in the regulations are met, namely: 1) the separate facilities are in 'reasonable geographic proximity' of one another; 2) they are 'used for the same purpose'; 3) and they 'share the same staff and equipment.'"  *Id.* (quoting 20 C.F.R. § 639.3(i)(3)).

2

The first factor requires that Latshaw's rigs be in "reasonable geographic proximity" of one another.  Meadows maintains that Latshaw's rigs within each division (i.e., the Permian Basin, Anadarko Basin, or Arkoma Basin) are in reasonable geographic proximity of the other rigs in that division, and he presents two arguments in support.  First, Meadows cites three cases for the proposition that there is precedent for aggregating job sites across great distances and state lines into a single site: *Brewer v. American Power Source, Inc.*, 291 Fed. Appx. 656 (5th Cir. 2008) (per curiam); *Reyes v. Greater Texas Finishing Corp.*, 19 F.Supp.2d 709 (W.D. Tex. 1998); and *United Food and Commercial Workers Union Local No. 72 v. Giant Markets, Inc.*, 878 F. Supp. 700 (M.D. Pa. 1995) (hereinafter "*United Food*").  Second, citing 20 C.F.R. § 639.3(i)(8), Meadows asserts that "[r]easonable geographic proximity must be judged based on industry standard, because courts are not permitted to apply the definition of 'single site of employment' to evade the purpose of the WARN Act."  P. Br. 19 (citing 20 C.F.R. § 639.3(i)(8)).  And he alleges that "it is industry

- 11 -

standard that rigs are located across great distances," and that "[a]n entire industry cannot avoid liability under the WARN Act by arbitrarily designating operating units within a division as single sites of employment." *Id.* at 19-20.

Latshaw asserts that its rigs are not in reasonable geographic proximity of each other because they are spread across hundreds of miles. Latshaw also posits that the divisions to which Meadows refers are merely underground geographical formations. For example, the Permian Basin is a sedimentary basin approximately 250 miles wide and 300 miles long, stretching from west Texas to southeast New Mexico. Latshaw maintains that nothing in the WARN Act, its regulations, or any reported decision suggests that a single site of employment is to be analyzed according to broad geographical divisions utilized within, or defined by, companies or industries.

3

Meadows has failed to raise a genuine fact issue concerning whether Latshaw's rigs in the Permian Basin (or any other division) are in reasonable geographic proximity of one another. The cases on which he relies do not support aggregating Latshaw's rigs in each division into a single site. In *Brewer* the defendant-employer moved for summary judgment on the ground that no mass layoff had occurred because fewer than one-third of the employees at its two plants (which it argued constituted a single site) suffered an employment loss. *See Brewer*, 291 Fed. Appx. at 659. To show that its two plants were a single site, the employer relied on its office manager's declaration stating, among other things, that the two plants were within 40 miles of each other. *Id.* The court noted that the

plaintiffs "made no attempt to prove the elements of their claims or dispute [the employer's] summary-judgment evidence." *Id.* The plaintiffs "only asserted" that the two plants should not be aggregated into a single site because, *inter alia*, they were in different states, but they "provided no facts" to support their assertions. *Id.* at 659-60. Because the plaintiffs failed to raise a fact issue on whether a mass layoff occurred, the court affirmed summary judgment for the employer. *Id.* at 660.

The defendant-employer in *Reyes* moved for summary judgment on plaintiffs' mass layoff claim, arguing that no mass layoff had occurred because an insufficient number of employees had suffered an employment loss within the relevant time period. *See Reyes*, 19 F.Supp.2d at 714. To decide this issue, the district court first determined whether the employer's buildings at 1430 and 1450 Vanderbilt Drive constituted a single site. *Id.* The court noted that the plaintiffs "allege[d], without supporting argument or evidence," that the two buildings should be considered separate sites. *Id.* Siding with the employer, the court held that the two buildings across the street from one another constituted a single site. *Id.* at 715. But the court denied summary judgment on this claim because a fact issue existed concerning the number of employees who suffered an employment loss. *Id.* at 715-16.

In *United Food* the defendants-employers moved to dismiss[8] plaintiffs' plant closure claim, maintaining that no plant closure had occurred because the five supermarkets located between 2.8 miles and 52.1 miles from each other could not be aggregated into a single site.

_____

[8]The defendants requested that their motions be treated as seeking summary judgment. *See United Food*, 878 F. Supp. at 703.

*See United Food*, 878 F. Supp. at 703.  The district court reasoned that "[w]hat is 'reasonable geographic proximity' would appear to be dependent upon the facts and circumstances of each case."  *Id.* at 707.  Concluding that there was a fact issue as to the degree of interrelationship among the five stores—because the parties did not submit any evidence concerning managerial autonomy, employee rotation, and equipment sharing among the stores—the court denied defendants' motions.  *Id.* at 703, 709.

In *Brewer*, *Reyes*, and *United Food* the parties clearly alleged the number of facilities within a single site and the distance between those facilities.  *Brewer* involved two plants located 40 miles apart, in separate states; *Reyes* involved two buildings situated across the street from one another; and *United Food* involved five stores located between 2.8 miles and 52.1 miles from each other.  The *United Food* court included in a footnote a chart that detailed the exact distance between the five stores.  *See United Food*, 878 F. Supp. at 704 n.7.  Unlike *Brewer*, *Reyes*, and *United Food*, Meadows has failed to introduce similar evidence that would enable a reasonable jury to find in his favor.  He does not even allege how many of Latshaw's 39 rigs were located in each of his alleged single sites (i.e., each division).  Rather, Meadows contends that "if even three of [Latshaw's] drilling rigs can be properly considered a single site of employment, then [Latshaw] has violated the WARN Act."  P. Br. 3.  Meadows presents evidence that he worked on nine different rigs in the Permian Basin, and he also cites in his summary judgment evidence (without any accompanying explanation) descriptions of 22 rigs located in the Permian Basin.  But Meadows does not specify which of these rigs should be treated collectively as a single site.

- 14 -

Nor does he allege how far apart the rigs in each division were from each other.  Rather, he merely asserts that "the Permian Basin oil and gas formation encompasses regions in West Texas and southeastern New Mexico." *Id.* at 11.  And, according to his summary judgment evidence, the Permian Basin covers an area approximately 250 miles wide and 300 miles long.  None of the cases on which Meadows relies indicates that the "reasonable geographic proximity" factor can be satisfied when an unspecified number of job sites are located an unspecified distance from each other somewhere within an area that is approximately 250 miles wide and 300 miles long.

Meadows' argument regarding 20 C.F.R. § 639.3(i)(8) is also unavailing.  Meadows does not provide any evidence in support of his allegations regarding the industry standards for drilling contractors.  Nor does he adduce any evidence of Latshaw's intent (or an industry's intent) to evade the statute.  Meadows further fails to cite, and the court has not found, any cases holding that "reasonable geographic proximity" must be judged based on industry standards.  And he fails to cite any cases in support of his assertion that Latshaw's rigs somehow constitute a truly unusual organizational situation under § 639.3(i)(8).

Because "separate facilities are only to be treated as a single site of employment if all three factors identified in the regulations are met," the court need not address the remaining two factors. *See Viator*, 109 F.3d at 1127 ("Because we agree with the district court that the three stores did not share the same staff or equipment, we need not address the other factors."); *see also Schimek v. MCI, Inc.*, 2006 WL 2252034, at *12 (N.D. Tex. Aug. 7, 2006) (Solis, J.) (citing *Viator*, 109 F.3d at 1127) (granting summary judgment for

defendants on ground that their actions did not qualify as mass layoff, and explaining that "[p]laintiff claim[ed] that multiple [defendants'] locations in the immediate proximity of Location 107 combined to constitute a 'single site of employment'" but "provide[d] no evidence that any of these elements are present").

Accordingly, the court grants Latshaw's motion for summary judgment on Meadows' claims to the extent that he asserts that Latshaw's rigs in each division are collectively a single site of employment.

## IV

In sum, a reasonable jury could not find that Latshaw ordered a mass layoff, or, alternatively, a plant closing, as defined by the WARN Act. Meadows has failed to raise a genuine fact issue on whether Latshaw's laying off of Meadows and others similarly situated "result[ed] in an employment loss at the single site of employment" for at least 50 employees. *See* 29 U.S.C. § 2101(a)(2), (3). This is so because Meadows has presented no evidence from which a reasonable jury could find that 50 or more employees experienced employment losses at any one of Latshaw's job sites (i.e., a rig, a yard, or the corporate office), or that any of Latshaw's job sites can be combined into a single site of employment.

\* \* \*

For the reasons explained, the court grants Latshaw's motion for summary judgment and dismisses this action by judgment filed today.

**SO ORDERED**.

May 31, 2016.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE